### In re HAWKINS.

#### (District Court, N. D. Georgia, N. W. D.    July 5, 1917.)

#### Nos. 855, 856.

1. BANKRUPTCY ⬤⟿165(1)—PREFERENCE—WHAT CONSTITUTES.
    Stockholders in a failing corporation, who had indorsed the corporation's paper, executed security deeds on their individual property to secure corporate creditors, with the understanding that the time of payment should be extended and further credit given the corporation. The transaction occurred a little more than a month before the bankruptcy of the corporation and of the stockholders individually. *Held* that, as the mortgages would enable the creditors obtaining such liens to secure the larger portion, if not all, of their debt to the exclusion of other creditors of the same class, such mortgages were preferences.
2. FRAUDULENT CONVEYANCES ⬤⟿27—MORTGAGE BY STOCKHOLDER—VALIDITY.
    In such case the mortgages were subject to attack as a fraud on the creditors of the stockholders, who were insolvent, for they could not assume debts of the corporation to the exclusion of their own creditors.

In Bankruptcy. In the matter of the bankruptcy of Miss M. E. Hawkins and Miss Lucile Hawkins. Petition by the trustee for leave to sell real estate free from all liens, and attacking the debts and liens of certain creditors, with petition to review order of referee in favor of trustee. Order of referee upheld.

In September, 1916, Miss M. E. Hawkins and Miss Lucile Hawkins were officers and managers of the Hawkins-King Millinery Company, owning $10,000 of the capital stock of said corporation. They also owned a house and lot in Atlanta, Ga., and about January, 1916, they borrowed $1,500 from one Rosa W. Young, giving a loan deed on said house and lot to secure same, and used

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

this in buying out other stockholders and financing the corporation. On October 24, 1916, the Hawkins-King Millinery Company went into bankruptcy, and on the same date the Misses Hawkins filed their individual voluntary petitions. On September 11, 1916, the Misses Hawkins each indorsed the corporation's paper to the Exchange National Bank of Rome, Ga., for $2,400. On September 14, 1916, a warranty deed was given by them on their property in Atlanta, subject to the deed given to Rosa W. Young, for $867.84, to secure the debt of the corporation to the Tinsley Millinery Company for that amount, and on September 15, 1916, a third security deed to said property in Atlanta, subject to the first two deeds, was given by them to secure a debt of the corporation to the Vatter-Lynn Millinery Company, also with the understanding that time of payment would be extended and further credit given the corporation. A bond to reconvey was given by Rosa W. Young to the bankrupts, but in making the two last deeds this bond was not assigned.

It appears from the record that the extension of time of payment and additional credit were of value to the corporation and to the Misses Hawkins; that at the time of making these security deeds the Misses Hawkins believed they were solvent; that, together with their interest in the corporation and the equity in the real estate, valued at $1,000, they believed they were solvent: that they were not in business on their own account, and owed practically no one individually at the time of their bankruptcy. At the time of the making of the second and third deeds there was no ordinary way for others of telling what their financial condition was, and all the evidence is to the effect that the lien claimants did not know or have reason to believe that the Misses Hawkins were insolvent. They did not know that they owed the bank. The trustee, representing the claim of the Exchange National Bank of Rome, filed a petition asking to sell the Atlanta real estate free from all liens, and attacks the validity of the debts and liens of the Tinsley Millinery Company, and the Vatter-Lynn Millinery Company.

Lipscomb & Willingham, of Rome, Ga., for trustee.
Walter S. Dillon, of Atlanta, Ga., for interveners.

NEWMAN, District Judge (after stating the facts as above).  [1] I have gone carefully into the question in this case, have examined the briefs of counsel, have re-examined the report and opinion of the referee, and am entirely satisfied that the referee's decision is right. The giving of these mortgages was undoubtedly a preference, it seems to me.

[2] I am inclined to think that the second point made by the trustee is also sound; that is, that the individual bankrupts, the ladies here, could not create a lien on their property, to assume the debt of another, while they were insolvent, and thereby cut out all of their creditors. This would be a fraud upon their individual creditors, which the law would not tolerate. All this was done a little more than a month before the bankruptcy of both the Hawkins-King Millinery Company and the Misses Hawkins individually. There seems to be no doubt at all of the mortgages creating a preference under the bankruptcy act, that the effect of the giving of the mortgages was to enable the mortgagees to secure a larger portion of, if not their entire, debt, to the exclusion of other creditors of the same class.

The action of the referee will stand approved, and it is directed that the property be sold, as ordered by the referee, at the most convenient time under present conditions, subject to the mortgage of Mrs. Rose W. Young, for the sum of $1,500, which is not contested by any one.